**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth S., <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security Administration, <br><br> Defendant. | No. CV-24-01526-PHX-SHD <br><br> **ORDER** |

Claimant Kenneth S. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("Commissioner") final decision denying him disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **affirmed**.

I.  **BACKGROUND**

Claimant filed applications for disability insurance benefits under Title II on March 15, 2021, and under Title XVI on October 8, 2021. (Administrative Record ("AR") 17.) In the ALJ's decision, the ALJ determined Claimant had the severe impairments of chronic inflammatory demyelinating polyneuropathy ("CIDP"), headaches with intracranial pressure, and morbid obesity. (AR 19.) The ALJ evaluated the medical evidence and testimony and concluded that Claimant was not disabled. (AR 23–31.) In doing so, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform light work, except "he could lift and carry 20 pounds occasionally and ten pounds

---

[1]  As a matter of practice, Claimant is referred to as such and, at most, by his first name and last initial to protect his privacy.

frequently." (AR 24.) The ALJ also included the following limitations:

> [He can] stand/walk and sit six [out of] eight hours each in an eight-hour workday; he should never climb ropes, ladders or scaffolds or crawl; he could frequently balance; he could occasionally climb ramps and stairs, stoop, kneel, and crouch; and he should avoid concentrated exposure to extreme hot and cold temperatures, wetness, humidity, loud noise, vibration, fumes, odors, dust, and gases, unprotected heights, and moving and dangerous machinery.

(*Id.*) Based on the RFC formulation and the testimony of the vocational expert ("VE") at the hearing, the ALJ found that Claimant could perform his past relevant work as an "electromechanical technician" and "maintenance supervisor" as generally performed. (AR 30.)

The ALJ thus denied Claimant's claim, (AR 31), and the Appeals Council denied his request for review, (AR 1). Claimant then appealed to this Court. (Doc. 1.)

## II.   LEGAL STANDARD

Only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Commissioner's disability determination may be set aside only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the record must be considered as a whole. *Id.* But if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether

the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC—the most he can do with his impairments—and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which is not relevant to this appeal.

## III. DISCUSSION

Claimant argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to account for the "total limiting effects" of Claimant's impairments. (Doc. 14 at 1.) Specifically, he asserts that the ALJ erred by (1) improperly omitting Claimant's asserted need for an assistive device from both the RFC and the ALJ's hypothetical question to the VE, (Doc. 14 at 12–13, 14–16), and (2) omitting Claimant's asserted need for off-task time for management of pain and edema, and due to his migraines, from the RFC, (*id.* at 13–14, 16–17). In making these arguments, Claimant also asserts that the ALJ improperly discounted his symptom testimony. (*Id.* at 14–18). The Court addresses each argument in turn.

### A. Assistive Device and Standing/Walking Limitations

Claimant argues that in excluding an assistive device from the RFC and the hypothetical posed to the VE, the ALJ erred by failing to apply SSR 96-9p—which sets forth the standard for determining whether a hand-held assistive device is medically required, (*id.* at 12–13), and by improperly discounting his symptom testimony, (*id.* at 16–

17). Claimant asserts that "at his best, the record patently supports that he requires a cane to ambulate due to his severe CIDP, and that he could not stand and walk for [the] majority of the workday," and "at his worst, he required and was prescribed a walker and wheelchair by his treating neurologist." (*Id.* at 15.)

Although the ALJ did not reference SSR 96-9p in his decision, his conclusion that an assistive device was not "medically required" was supported by substantial evidence because there was no "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing," SSR 96-9p, beyond a limited period of time. Specifically, the ALJ found that while Claimant claimed to use an assistive device, "treating physicians mentioned a walker only for the brief time upon recovering from episodes" of CIDP, and not thereafter. (AR 28.) And the ALJ pointed out that Claimant "listed multiple normal neurological examinations with normal gait and no mention of an assistive device by Alia Askari, M.D. [AR 9968–88] and Andrew Sharobeem, DO [AR 10031–96] which dispel[led] any basis of a medical necessity for an assistive device." (AR 29.) The ALJ also cited numerous medical records as examples of how Claimant's "own comments to treating physicians and observations of treating physicians" were inconsistent with Claimant's allegations. (*See, e.g.*, AR 27 (citing AR 584–85 (no sensory or strength deficits with normal range of motion); *id.* at 1586 (normal strength, sensation, motor function, and range of motion); *id.* at 10037–38 (normal gait, balance, motor function, and sensation, with range of motion in the spine and hip mildly reduced)).)

Further, the ALJ found that Claimant's reports of activities "were indicative of greater functional capacity than alleged," (AR 28), such as Claimant's frequent walks with no reports of sensory perception impairments in January 2023, (AR 12438). The ALJ also considered a June 2022 administrative medical finding by Dr. Dan Mirza, and an April 2023 reconsideration administrative medical finding by Dr. Ericka Wavak, —both finding that Claimant could perform a light level of exertion, and both of which the ALJ found generally persuasive. (AR 29.) Moreover, the ALJ considered Dr. Keith Cunningham's June 2022 physical consultative examination of Claimant, which also concluded that

Claimant could perform a light level of exertion, and which the ALJ found generally persuasive. (*Id.*)

In Claimant's briefs, he cites various portions of the record to argue he needed and was prescribed an assistive device. (*See, e.g.*, Doc. 14 at 15; Doc. 21 at 2–5.) But, as the ALJ found, these records are from a "brief period of time" where Claimant had an episode of CIDP, (AR 28), around January and February 2023. (*See* Doc. 14 at 15 (citing AR 7073–76 (January 2023); AR 12154 (January 2023); AR 12521 (January 2023); AR 6736 (February 2023)).) After this period, the record contains multiple references to Claimant's normal gait, strength, balance (*see, e.g.*, AR 7093 (March 2023), 9046 (October 2023), 9864–65 (January 2024)), and range of motion, (*see, e.g.*, AR 8080 (May 2023), 10317 (May 2023), 12902 (August 2023)).

Claimant briefly appears to argue, in perfunctory fashion, that the ALJ discounted his symptom testimony regarding his need for and use of an assistive device. (Doc. 14 at 16–17; Doc. 21 at 5–6.) If an ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citation omitted).

Here, the ALJ generally found that Claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent because the medical record did not fully support his allegations. (AR 25.) With respect to the assistive device, the ALJ provided specific, clear and convincing reasons supported by substantial evidence to properly reject Claimant's symptom testimony, as described above.

Because the ALJ did not err in declining to reference an assistive device in the RFC, he also did not err by failing to ask the VE how Claimant's asserted reliance on assistive devices would impact his ability to perform his past jobs or other jobs in the national economy. *See Leach v. Kijakazi*, 70 F.4th 1251, 1254–55 (9th Cir. 2023) (stating that, when

the "ALJ's question to a vocational expert accurately describes the claimant's limitations," the ALJ "ordinarily may rely on the expert's testimony" (emphasis omitted)).

### B.     Off-Task Time for Pain Management and Headaches

Claimant next contends that the ALJ erred by failing to include off-task time from the RFC, arguing that the ALJ improperly ignored two medical records suggesting that Claimant elevate his leg three times a day, (Doc. 14 at 13–14), and that the ALJ improperly discounted Claimant's statements and testimony regarding his severe headache impairment by making conclusory findings based on a mischaracterization of the facts, (*id.* at 14, 16–17).

With respect to the elevation of his leg, Claimant points to discharge instructions from September 2023 advising him to elevate his legs above heart level multiple times a day. (*Id.* at 14 (citing AR 9225 ("Raise (elevate) the injured area above the level of your heart while you are sitting or lying down"); *id.* at 9302 ("Pt will elevate legs 15-30 mins 3xday as able")).) While the ALJ did not discuss this instruction, the ALJ's failure to address every item in the record does not constitute legal error. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." (citation modified)). The ALJ's lengthy discussion of the medical records, accompanied by multiple exhibit citations, demonstrates that he properly considered the evidence in formulating the RFC. (*See generally* AR 24–29.)

Substantial evidence supports the ALJ's decision not to include an off-task time limitation in the RFC. For example, the ALJ cited to medical records where Claimant denied fatigue and weakness, (*see, e.g.*, AR 5878, 10037–38), and physical examinations showed normal musculoskeletal and/or neurological findings, (*see, e.g.*, AR 1586 (normal strength, range of motion, and motor), 7093 (normal strength, sensation, gait, and station)). Further, the ALJ considered Claimant's CIDP ("[t]he diagnosis for a number of neurological complaints") and incorporated limitations consistent with it, stating that it contributed to "a light level of exertion and postural limitations" as well as avoidance of

"environmental conditions that might exacerbate [Claimant's] symptoms."[2] (AR 25–26.)

The ALJ's discussion of the evidence builds an accurate and logical bridge to the RFC and explains the ALJ's reasoning with sufficient specificity and clarity to allow for meaningful review. *Gomez-Perez v. Berryhill*, 2017 WL 810275, at *2 (C.D. Cal. 2017); *see also Thomas*, 278 F.3d at 954 (holding that if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld"); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (holding that, "even when an agency explains its decision with less than ideal clarity," the decision must be upheld "if the agency's path may reasonably be discerned") (citation modified), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

With respect to his headaches, Claimant argues "his relentless migraine headaches were unrelieved by medication" and therefore the ALJ erred in finding that Claimant's migraines resolved with medication and that he often denied having headaches. (Doc. 14 at 16.) The ALJ, however, cited evidence establishing that Claimant's migraines were not intractable, as they resolved with treatment. (AR 26 (citing AR 9115).) *Cf. Sanchez v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4798452, at *6 (D. Ariz. 2022) (ALJ's finding that migraines were not intractable "does not require further explanation" and, in the context of a disability determination, is "sufficient explanation" for finding the migraines do not "justify a reduction in RFC"), *report and recommendation adopted*, 2022 WL 4783758 (D. Ariz. 2022).

Moreover, the ALJ's decision to partially discount Claimant's symptom testimony concerning his headaches was based on specific, clear, and convincing reasons. *See Revels*, 874 F.3d at 655. The ALJ found that Claimant frequently denied headaches, (AR 26 (citing *inter alia* AR 4432, 5676, 5943, 6011)), and that magnetic resonance imaging studies of

---

[2] Additional evidence in the record also supports the ALJ's conclusions. Claimant's September 2023 general discharge instructions seem to be instructions for treating one instance of edema rather than operating as a permanent instruction, as Claimant was directed to "[c]ontact a health care provider if . . . [y]our edema does not get better with treatment," (AR 9225), and return "in 4 months to reassess symptoms," (AR 9303). Indeed, the record as a whole indicates Claimant's edema were intermittent occurrences, as some records, like these, note the existence of edema, while others found Claimant did not have edema. (*See, e.g.*, AR 10038 (no edema), 10050–51 (same).)

Claimant's brain were essentially normal, (AR 26 (citing AR 1437, 6478)).

In any event, even if the ALJ did err in partially discounting the testimony, any error was harmless. While the ALJ found that the "claimant's statements regarding the intensity, persistence and limiting effects" of his symptoms were not fully supported by the medical record, the ALJ took Claimant's headache history into account, as this "contributed to the claimant's light level of exertion," "postural limitations," and avoidance of "environmental conditions, including loud noise, that might exacerbate his symptoms." (AR 26.) Put another way, the RFC includes limitations based on Claimant's headaches. *Cf. Molina*, 674 F.3d at 1121 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 29th day of August, 2025.

_____
Honorable Sharad H. Desai
United States District Judge